UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOSEPH A. FERRARA, SR., et al.,

                     Plaintiffs,

             - against -

ILEANA TRUCKING, LLC,

                     Defendant.
----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

09-CV-5079 (DLI) (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

      Joseph Ferrara and nine other trustees (the "Trustees") of the Local 282 Welfare, Pension, Annuity, Job Training, and Vacation and Sick Leave Trust Funds (the "Funds"), commenced this action on November 19, 2009, against defendant Ileana Trucking, LLC ("Ileana") seeking certain relief associated with Ileana's alleged failure to submit to an audit of its books and records. Docket Entry ("DE") 1 (Complaint). Ileana never responded to the Complaint, and the Trustees therefore moved for default judgment. DE 6. By order dated April 15, 2010, the Honorable Dora L. Irizarry, United States District Judge, referred the matter to me for a report and recommendation. I now make my report and, for the reasons set forth below, respectfully recommend that the court enter an order awarding the Trustees judgment in the total amount of $275,545.76 (consisting of $136,875.26 in contributions; $67,067.28 in interest on the contributions; $67,067.28 in additional damages; $3,730.95 in reasonable attorneys' fees; $454.99 in other litigation costs; and $350.00 in liquidated audit fees). I further respectfully recommend that the court also order Ileana to submit to an audit of its books and records for the relevant period and permit the Trustees thereafter to petition the court to amend the judgment to reflect any additional award of damages and pre-judgment interest that might be appropriate.

I.  Background

The Funds are multi-employer trusts established for the benefit of employees in the trucking industry through an Agreement and Declaration of Trust (the "Trust Agreement") entered into by Local Union No. 282 of the International Brotherhood of Teamsters (the "Union") and various industry employees. Complaint ¶¶ 4-6; DE 9 (Declaration of [Funds Employee] Theresa Cody ("Cody") ("Cody Dec.") ¶¶ 4-6 & Ex. A (copy of Trust Agreement). The Trust Agreement requires Ileana to contribute to the Funds – and to provide regular written reports upon which contribution amounts are based – according to rates and schedules set forth in a separate collective bargaining agreement to which Ileana is a party. Complaint ¶¶ 7, 9; Trust Agreement, Art. IX § 1(a)-(c). Ileana entered into a series of such separate agreements with the Union (collectively, the "CBA"), the first of which took effect on November 25, 2007, Complaint ¶ 9 & Cody Dec. Ex. B (latest version of CBA), and which upon expiration was succeeded by a Memorandum of Agreement (the "MOA"). Cody Dec. Ex. E (MOA). The MOA provided for increased rates of contribution to the Funds beginning July 1, 2009. MOA § II.

The Trust Agreement further provides that the Trustees may at any time audit Ileana's books and records and that Ileana's failure to provide such materials for audit within twenty days of the Trustees' written demand constitutes a material breach of the contract. Complaint ¶ 13; Trust Agreement, Art. IX §§ 1(d)-(f).

The Trust Agreement requires Ileana to make contributions to the Funds on a timely basis. Trust Agreement, Art. IX § 1(b). Failure to do so not only constitutes a material breach of contract, but also of the relevant provision of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1145 *et seq.* ("ERISA"). Complaint ¶ 27; Trust Agreement, Art. IX § 3; 29 U.S.C.

§ 1145. Such a breach entitles the Trustees to seek a range of remedies, including an award of contributions (which the Trustees may estimate pursuant to contractually defined formulas in the event Ileana also fails to submit to an audit, submit the required reports associated with the monthly contributions, or maintain the required books and records), as well as interest, an additional amount of liquidated damages, related costs including attorneys' fees, and injunctive relief. Complaint ¶¶ 29, 35-36; Trust Agreement, Art. IX §§ 1(e)-(f), 3; 29 U.S.C. § 1132(g)(2).

The Trustees filed the instant action on November 19, 2009. They alleged that Ileana failed to provide all of its books and records for an audit notwithstanding repeated written demands, and that it thereby breached the Trust Agreement and violated ERISA. Complaint ¶¶ 21-25, 31-36. The Trustees also claimed that in the event the missing books and records revealed a failure to make timely contributions, that too would constitute a material breach of the Trust Agreement as well as a violation of ERISA. *Id.* ¶ 20, 35-36.

The Trustees served the Complaint on Ileana on November 24, 2009. DE 3. Ileana never responded. On December 29, 2009, at the Trustees' request, the Clerk noted Ileana's default. DE 4; DE 5. On March 9, 2010, the Trustees filed the instant motion for default judgment. DE 6. In support of their motion, the Trustees filed a Memorandum of Law, DE 7 ("Memo") and declarations of both their counsel and a senior member of the Funds' Collection Department. DE 8 (Declaration of [Trustees' Counsel] Michael S. Adler ("Adler") in Support of Plaintiffs' Motion for Default Judgment) ("Adler Dec."); Cody Dec. Judge Irizarry then referred the motion to me. Order dated April 15, 2010. On April 16, 2010, I afforded the Trustees an opportunity to submit, no later than May 7, 2010, any additional written materials in support of their request for relief that they wished for me to consider; I further directed the Trustees to provide a copy of my order to Ileana

3

within one week. Order dated April 16, 2010. The Trustees complied with the latter order, DE 10, but declined to submit any additional materials.

In the proposed order submitted as part of their motion, the Trustees specified the precise relief they sought. They asked the court to find Ileana liable for specific monetary damages; specifically, the Trustees sought $152,653.24 for unpaid contributions and penalties, $45,404.42 in interest through March 4, 2010 plus $75.28 per day in additional interest accruing from March 5, 2010, through the date of the payment, and $45,404.42 in liquidated damages. DE 6 at 3-4 (Proposed Order) ¶ 2. Additionally, the Trustees requested an order requiring Ileana to submit for audit certain books and records relating to the period from November 25, 2007, through June 30, 2009. They also asked the court to find Ileana liable to the Trustees for any unpaid contributions revealed by the audit, as well as interest and additional liquidated damages on those amounts, plus costs. *Id.* ¶ 1. Finally, the Trustees requested the reimbursement of $350.00 in audit costs and $4,187.26 in attorneys' fees and other costs. *Id.* ¶ 2.

II. Discussion

    A. Applicable Law

        1. Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. Fed. R. Civ. P. 8(b)(6); *see Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). The fact that a complaint stands unanswered does not, however, suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a

4

defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See*, *e.g.*, *id.* at 84; *Greyhound Exhibitgroup*, 973 F.2d at 159.

If the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (quoting *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing. *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991); *Credit Lyonnais*, 183 F.3d at 155. The Trustees have submitted the following evidence, in addition to declarations from an employee of the Funds with relevant knowledge and from their counsel: copies of the pertinent provisions of the parties' various contractual agreements; remittance reports for the relevant period that Ileana provided to the Trustees; an Employer Work History Report, generated by the Funds and reflecting the total amount of hours remitted by Ileana for the audit period; and the Trustees' worksheets containing calculations of the contributions and interest that they assert Ileana owes to the Funds. *See* Cody Dec. Exs. A-F. The Trustees have had ample opportunity to put additional information before me but have apparently decided not to do so. Upon this record, I have declined to convene an evidentiary hearing and make the instant report and recommendation on the basis of the submitted documents. *See Action S.A.*, 951 F.2d at 508; *Transatl. Marine Claims Agency*, 109 F.3d at 111.

## 2. ERISA

ERISA is a comprehensive legislative scheme governing the administration of employee benefit funds for the purpose of protecting employees. *HMI Mech. Sys., Inc. v. McGowan*, 266 F.3d 142, 148 (2d Cir. 2001) (citing *Burgio & Campofelice, Inc. v. New York State Dep't of Labor*, 107 F.3d 1000, 1007-08 (2d Cir. 1997)). Under ERISA, employers need not provide any particular benefits; however, once an employer elects to provide benefits, the statute governs the terms of administration of the benefits. *Burgio*, 107 F.3d at 1008. Employers obligated to make contributions within the meaning of the statute must do so in accordance with the relevant multiemployer plan or collective bargaining agreement. 29 U.S.C. § 1145; *Cement & Concrete Workers Dist. Council v. Lollo*, 35 F.3d 29, 36 (2d Cir. 1994) (duty to pay benefits must spring from a source other than ERISA) (citing *Mass. Laborers' Health & Welfare Fund v. Starrett Paving Corp.*, 845 F.2d 23, 25 (1st Cir. 1988)). ERISA's overarching purpose – to protect fund beneficiaries' rights – is equitable, and the court therefore enjoys considerable discretion to fashion appropriate relief where a plaintiff successfully proves a violation. *Katsaros v. Cody*, 744 F.2d 270, 281 (2d Cir. 1984); *see also* 29 U.S.C. § 1001(a) (congressional finding that safeguards must be provided with respect to establishment, operation, and administration of employee benefit plans to protect the interests of employees and their beneficiaries).

## B. Liability

The Trustees adequately allege that Ileana was obligated to make certain contribution payments to the Funds and to make its books and records available for audit on demand pursuant to the CBA and ERISA, and that it failed to discharge those obligations. Ileana's default concedes the

6

truth of those allegations for purposes of liability. I therefore respectfully recommend that the court find Ileana liable on the sole cause of action in the Complaint.

C. Damages

1. Contributions

Ileana delivered remittance reports to the Funds for all of the months from November 2007 through June 2009.[1] Cody Dec. ¶¶ 19-20. The submitted reports reveal that Ileana did not fail to make required contributions during the period from November 2007 through June 2009; to the contrary, Ileana regularly made such contributions during that time. *See* Cody Dec. Exs. C & D. The only problem is that Ileana did not comply with its contractual obligation to make all of its books and records available to the Trustees for an audit upon written demand. Complaint ¶¶ 21-25; Cody Dec. ¶ 14. By failing to respond within 20 days of such written demand, Ileana breached the Trust Agreement and triggered a provision pursuant to which the Trustees are entitled to "compute ... additional contributions due for any month by taking 50 percent of the number of hours reported for that month and multiplying said number of hours by the current contribution rate." Trust Agreement, Art. IX § 1(f) (the "Remitted Reports Penalty Provision"); Cody Dec. ¶¶ 15-16.

The Trustees have calculated the amount of contributions owed pursuant to the Remitted Reports Penalty Provision, Cody Dec. Ex. F, and request a total of $152,653.34.[2] However, based on a comparison of the worksheets used for those calculations with the contribution rates set forth

---

[1] The Trustees have been unable to locate Ileana's original remittance reports for 12 pay periods. Cody Dec. ¶ 21. However, the information contained in those reports has been entered into the Fund's computer tracking system and is reflected in the Employer Work History Report submitted by the Trustees. *Id.* I am therefore satisfied that the Trustees have sufficiently documented Ileana's contributions.

[2] Although the Trustees claim that they are owed contributions dating from November 25, 2007, Cody Dec. ¶¶ 13, 19, they only seek contributions dating from December 3, 2007. *Id.* Exs. C & F.

in the governing agreement, CBA §§ 5, 12(A)-(B) & (D)-(E), it appears that those calculations are incorrect. The Trustees properly calculate the number of hours for each month in which surplus contributions are due by taking "50 percent of the number of hours reported for that month." Cody Dec. Exs. C & F. They then proceed, however, to multiply those numbers by contribution rates that are inconsistent with the CBA for the period at issue. Specifically, the Trustees use rates that are listed in the MOA – rates that did not take effect until July 1, 2009. Cody Dec. ¶ 23; MOA §§ I-II.

To the extent that the Trustees intend to rely on the fact that the Remitted Reports Penalty Provision provides that the Trustees may multiply the calculated number of hours "by the *current* contribution rate," Trust Agreement, Art. IX § 1(f) (emphasis added), they have erred. This court has construed that phrase "to refer to the rate in effect during the time period for which plaintiffs seek contributions." *LaBarbera v. Pass 1234 Trucking Inc.*, 2007 WL 2908175, at *5 (E.D.N.Y. Sept. 28, 2007); *see also LaBarbera v. Tadco Constr. Corp.*, 647 F. Supp. 2d 247, 252 (E.D.N.Y. 2010). Since the Trustees are asking for relief for work performed by Union employees during months before July 1, 2009, it is improper to apply rates listed in the MOA that were not in effect during those months. The proper contribution rates for the Funds are found in the CBA, which includes an increase for some of the funds on July 1, 2008. *See* CBA §§ 5, 13(A)-(B) & (D)-(E). I therefore adjust the hourly contribution rates as follows:

|  | Claimed (MOA) | Adjusted (CBA - Before July 2008) | Adjusted (CBA - After July 2008) |
| --- | --- | --- | --- |
| Welfare Fund | $10.39 | $9.20 | $9.60 |
| Pension Fund | $8.50 | $7.00 | $7.00 |
| Annuity Fund | $10.0925 | $9.0025 | $9.5025 |
| Job Training Fund | $0.10 | $0.10 | $0.10 |
| Vacation Sick Leave Fund | $3.00 | $3.00 | $3.00 |

Applying these rates to the number of hours under the Remitted Reports Penalty Provision yields the following results:

|  | Audit Period | Hours | | Contribution Rate | | Adjusted Contributions |
|---|---|---|---|---|---|---|
|  |  | Reported | Penalty (totalx0.5) | Claimed | Adjusted |  |
| Welfare Fund | Dec. 07 – Jun. 08 | 4,497 | 2,248.5 | $10.39 | $9.20 | $20,686.20 |
|  | Jul. 08 – Jun. 09 | 4,252 | 2,126.0 | $10.39 | $9.60 | $20,409.60 |
| Pension Fund | Dec. 07 – Jun. 09 | 8,749 | 4,374.5 | $8.50 | $7.00 | $30,621.50 |
| Annuity Fund | Dec. 07 – Jun. 08 | 6,458 | 3,229.0 | $10.0925 | $9.0025 | $29,069.07 |
|  | Jul. 08 – Jun. 09 | 4,547 | 2,273.5 | $10.0925 | $9.5025 | $21,603.93 |
| Job Training Fund | Dec. 07 – Jun. 09 | 8,749 | 4,374.5 | $0.10 | $0.10 | $437.45 |
| Vacation Sick Leave Fund | Dec. 07 – Jun. 09 | 9,365 | 4,682.5 | $3.00 | $3.00 | $14,047.50 |
| Total |  |  |  |  |  | $136,875.26 |

I therefore respectfully recommend that the court award the Trustees $136,875.26 in contributions for months as to which Ileana submitted reports but did not comply with an audit.

    2.    <u>Interest</u>

The Trustees are entitled to interest on the contributions they are owed, as calculated above. ERISA provides that such interest should be calculated using the rate in the relevant benefit plan or, if none, the rate prescribed by 26 U.S.C. § 6621. 29 U.S.C. § 1132(g)(2). An amendment to the Trust Agreement sets the applicable rate for the instant claims "at the rate of 1½ percent per month of each monthly amount due for each month [sic]." Trust Agreement at A9 (Amendment to Restated Agreement and Declaration of Trust dated Oct. 28, 2003). The Trust Agreement further provides that the Trustees may recover interest at that rate "from the first day of the month when

9

the payment was due to the date when payment was made." Trust Agreement, Art. IX § 3.[3] The Trustees calculate that they are owed $45,404.42 in interest on the contributions through March 4, 2010, plus additional interest accruing from March 5, 2010, through the date of the payment. Adler Dec. ¶ 16; Proposed Order ¶ 2(b). Because their request for interest is based on an erroneous claim for contributions, I adjust the interest calculation accordingly. As summarized below, based on the adjusted amount of unpaid contributions, I calculate that Ileana owes interest at a monthly rate of 1.5 percent on a principal amount of $136,875.26 as follows:

| Month | Contributions Due | Date Interest Accrued | Days through March 28, 2010 | Interest Due through March 28, 2011 |
| --- | --- | --- | --- | --- |
| Dec-07 | $10,048.95 | 1-Jan-08 | 1182 | $5,857.57 |
| Jan-08 | $9,457.06 | 1-Feb-08 | 1151 | $5,367.98 |
| Feb-08 | $11,672.51 | 1-Mar-08 | 1122 | $6,458.57 |
| Mar-08 | $9,416.76 | 1-Apr-08 | 1091 | $5,066.47 |
| Apr-08 | $7,174.11 | 1-May-08 | 1061 | $3,753.73 |
| May-08 | $17,437.57 | 1-Jun-08 | 1030 | $8,857.33 |
| Jun-08 | $8,101.18 | 1-Jul-08 | 1000 | $3,995.10 |
| Jul-08 | $13,540.93 | 1-Aug-08 | 969 | $6,470.71 |
| Aug-08 | $18,160.94 | 1-Sep-08 | 938 | $8,400.80 |
| Sep-08 | $11,078.01 | 1-Oct-08 | 908 | $4,960.52 |
| Oct-08 | $4,891.07 | 1-Nov-08 | 877 | $2,115.35 |
| Nov-08 | $4,114.22 | 1-Dec-08 | 847 | $1,718.51 |
| Dec-08 | $817.67 | 1-Jan-09 | 816 | $329.04 |
| Jan-09 | $2,639.76 | 1-Feb-09 | 785 | $1,021.91 |
| Feb-09 | $467.24 | 1-Mar-09 | 757 | $174.43 |
| Mar-09 | $350.43 | 1-Apr-09 | 726 | $125.46 |
| Apr-09 | $133.79 | 1-May-09 | 696 | $45.92 |
| May-09 | $2,634.76 | 1-Jun-09 | 665 | $864.06 |
| Jun-09 | $4,738.32 | 1-Jul-09 | 635 | $1,483.81 |
| Total | $136,875.26 | | | $67,067.28 |

---

[3] I interpret the relevant provision to mean that interest begins accruing on the first day of the month in which the audit calculations were completed. *See Ferrara v. K&W Logistics*, No. 09-CV-3412, DE 13 (E.D.N.Y. Aug. 3, 2010) (report and recommendations) ("*K&W I*") at 11-14. I note, however, that this court has previously adopted the Trustees' calculation method in this regard. *See id.*, DE 16 (E.D.N.Y. Sept. 30, 2010) (order adopting in part and modifying in part report and recommendations) ("*K&W II*") at 2-3. I therefore rely on the latter method in calculating interest.

In determining the proper end date for the interest calculation, I note that objections to this Report and Recommendation will not be due until, and judgment therefore will be entered no earlier than, March 28, 2011. I therefore calculate interest through that date, and on that basis I respectfully recommend that the court award a total of $67,067.28 in interest.

### 3. Additional Damages

In addition to an award of contributions and interest, ERISA also provides for an award in "an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent [of unpaid contributions]." 29 U.S.C. § 1132(g)(2). As explained above, I calculate the interest owed through March 28, 2011, to be $67,067.28, which is greater than 20 percent of the contributions owed. I therefore respectfully recommend that the court award that amount in additional damages.[4]

### 4. Attorneys' Fees

The Trustees seek reimbursement of $3,730.95 in attorneys' fees for 18.7 hours of compensable work. *See* Adler Dec. ¶ 10. The relevant statutory provision makes an award of reasonable attorneys' fees obligatory, not discretionary. *See* 29 U.S.C. §§ 1132(g)(2), 1145; *LaBarbera v. Hauserman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004).

Courts in this circuit assess such fee applications using the "lodestar method," under which a reasonable hourly rate is multiplied by a reasonable number of hours expended. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997); *King v. JCS Enters., Inc.*, 325 F. Supp. 2d 162,

---

[4] The amount I recommend for this component of the award exceeds the amount specified in the corresponding portion of the Trustees' request. However, the total award I recommend is slightly less that the total amount sought (taking into account the Trustees' request for daily interest in addition to other sums). Accordingly, Ileana was on sufficient notice of the risk it took by failing to take advantage of its opportunity to participate in the damages inquest, and the award I recommend is therefore consistent with the applicable rule. *See* Fed. R. Civ. P. 54(c).

166 (E.D.N.Y. 2004) (citing *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004); *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).[5] District courts have discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). I therefore proceed to examine the reasonableness of both the hourly rates at which the Trustees' attorneys seek to be compensated and the number of hours for which they seek reimbursement.

    a.  <u>Hourly Rates</u>

The Trustees ask for an award of fees based on hourly rates of $370 for partner Elizabeth O'Leary ("O'Leary"), $275 for associate Adler, and $90 for paralegal assistants. Adler Dec. ¶ 10. I have previously explained why I believe such rates to be unwarranted under applicable law, *see K&W I* at 15-17, but this court, on the Trustees' objection, rejected that analysis and awarded fees based on the rates claimed by their counsel. *K&W II* at 3. I see no basis for distinguishing the instant case from that precedent, and therefore assume that the court will act accordingly here.

    b.  <u>Hours Expended</u>

I next turn to the question of whether the hours expended by counsel were reasonable in an action of this nature. Based on my review of the monthly billing invoices submitted by the Trustees, it appears that they seek reimbursement for a total of 18.7 hours of work, including 0.9 hours worked by O'Leary, 11.6 hours worked by Adler, and 6.2 hours by paralegals. Adler Dec. ¶ 10, Ex. C.

---

[5] Although the "lodestar" term's "value as a metaphor has deteriorated to the point of unhelpfulness[,]" its use is still permitted as a convenient shorthand. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 & n.4 (2d Cir. 2008). I use the term here only as such, and without the artificial limitations rejected in *Arbor Hill*.

A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed, preferably through contemporaneous time records that describe with specificity the nature of the work done, the hours expended, and the dates. *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir.1983). The absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances. *Scott v. City of New York*, 626 F.3d 130, 133-34 (2d Cir. 2010). Inadequate documentation is grounds for reduction of a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Levy v. Powell*, 2005 WL 1719972, at *7 (E.D.N.Y. July 22, 2005). Having reviewed the Trustees' submissions in this regard I am satisfied that they sufficiently document and justify the 18.7 hours counsel has billed. *See* Adler Dec. Ex. C. I also note that the Trustees' counsel already reduced their bill to the Trustees by 10 percent. *Id.* Thus, they effectively seek reimbursement for 16.83 hours, which is reasonable in a case of this nature. Accordingly, I respectfully recommend that the court award the Trustees $3,730.95 in attorneys' fees.

5. <u>Other Litigation Costs</u>

The Trustees seek reimbursement of $456.31 in costs counsel claim to have incurred on their behalf. Adler Dec. ¶ 14. They seek to have reimbursed the following: the $350 filing fee, $62 for service of process, and $44.31 for postage, photocopies, and document delivery services. *Id.* ERISA plainly provides for the reimbursement of costs, and the docket conclusively establishes that the Trustees paid $350.00 to file their complaint. Further, submissions by counsel clearly document that the Trustees paid $62.00 for service of process of the complaint. Adler Dec. Ex. D. Submissions by counsel also document that the Trustees paid $22.89 for postage and $20.10 for photocopies and explain the purpose of these costs to this litigation. Adler Dec. ¶ 14 n 2, Ex. C.

With respect to the remaining costs, however, the Trustees have failed to provide adequate proof of their necessity to this litigation. Accordingly, I respectfully recommend that the court award the Trustees litigation costs in the amount of $454.99.

      6.      Audit Fee

The Trustees also seek reimbursement of audit fees in the amount of $350.00. Cody Dec. ¶ 36; Proposed Order ¶ 2(d). The Trust Agreement specifically provides for such relief in the circumstances of this case. Trust Agreement, Art. IX § 3(b) & p. A5. I therefore respectfully recommend that the court grant that portion of the Trustees' request for relief.

    D.      Injunctive Relief

The Trustees also seek injunctive relief pursuant to ERISA. Specifically, they ask the court to require Ileana to submit to an audit of its books and records for the period from November 25, 2007 through June 30, 2009. Complaint at 9 (prayer for relief); Proposed Order ¶ 1. In an action to enforce Section 1145 of ERISA, a court shall award, in addition to certain categories of monetary damages, "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). That relief "may include an injunction directing a defendant to comply with a requirement, imposed by a collective bargaining agreement, that the defendant permit and cooperate in the conduct of an audit of its records." *Cement & Concrete Workers Dist. Council Welfare Fund v. Azzarone Contracting Corp.*, 2007 WL 2712314, at *5 (E.D.N.Y. Sept. 13, 2007) (quoting *Mason Tenders Dist. Council Welfare Fund v. A.G.I., Inc.*, 2005 WL 1565831, at *4 (S.D.N.Y. June 8, 2005)). Here, the Trust Agreement allows the Trustees to audit Ileana's books and records "at any time" in connection with Ileana's obligation to submit contributions to the Funds. Trust Agreement, Art. IX § 1(d).

As a result of Ileana's default, the court must accept as true the Trustees' allegation that Ileana has failed to cooperate in an audit of its books and records. By the terms of the Trust Agreement, that allegation – taken together with the Trustees' allegations regarding the contributions owed – is sufficient to require Ileana to submit to an audit, and I conclude that such relief is appropriate pursuant to the applicable statute. *See* 29 U.S.C. § 1132(g)(2)(E). Should the court order the relief that I now recommend, the scope of the audit should be limited to "[p]ertinent books and records" as defined by Article IX § 1(d) of the Trust Agreement.

I therefore respectfully recommend that the court order Ileana to permit and cooperate in an audit of its books and records, subject to the limitations set forth above. I further recommend that, within 30 days of the completion of the audit, the court allow the Trustees to adduce proof of the amount of contributions owed to them by Ileana for the period beginning November 25, 2007, and ending June 30, 2009, and to petition the court to amend the judgment to reflect any additional award of damages and pre-judgment interest that might be appropriate.

III.     Recommendation

For the reasons set forth above, I respectfully recommend that the court enter an order awarding the plaintiffs judgment in the total amount of $275,545.76 (consisting of $136,875.26 in contributions; $67,067.28 in interest on the contributions; $67,067.28 in additional damages; $3,730.95 in reasonable attorneys' fees; $454.99 in other litigation costs; and $350.00 in liquidated audit fees). I further respectfully recommend that the court also order defendant Ileana Trucking, LLC to submit to an audit of its books and records for the period from November 25, 2007 through June 30, 2009. Finally, I respectfully recommend that the court permit the plaintiffs, within 30 days of the completion of the audit, to adduce proof of the amount of any additional contributions

the defendant owes them for that period and to petition the court to amend the judgment to reflect any additional award of damages and pre-judgment interest that might be appropriate.

IV.     Objections

I direct the plaintiff to serve a copy of this Report and Recommendation on the defendant by certified mail, and to file proof of service no later than March 11, 2011. Any objections to this Report and Recommendation must be filed no later than March 28, 2011. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

**SO ORDERED.**

Dated:  Brooklyn, New York
        March 9, 2011

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge